## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**PHILLIS POUNDS,** individually and
on behalf of all others similarly situated,                   Case No.:

       Plaintiff,

v.                                                                                    **JURY TRIAL DEMANDED**

**ZEROED-IN TECHNOLOGIES, LLC** and
**DOLLAR TREE STORES, INC.,**

       Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Phillis Pounds, individually and on behalf of the Class defined below of similarly situated persons, allege the following against Zeroed-In Technologies, LLC ("Zeroed-In") and Dollar Tree Stores, Inc. ("Dollar Tree") (collectively "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## SUMMARY OF THE CASE

1.    This case involves the Data Breach that Defendant Zeroed-In announced on November 27, 2023, wherein—from August 7, 2023 to August 8,

2023—the personal identifying information ("PII") of millions of individuals was exposed due to a flaw in Defendant Zeroed-In's information technology systems, which allowed hackers and other bad actors to obtain individuals' PII for unsavory and illegal purposes.

2.     Among those affected by the Data Breach, the PII of current and/or former employees of Defendant Dollar Tree was also compromised.

3.     This Class Action Complaint is filed on behalf of all persons in the United States, described more fully in the following sections, whose PII was compromised in the Data Breach.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

5.     This Court has jurisdiction over Defendant Zeroed-In because Zeroed-In  has availed itself of the rights and benefits of the State of Florida by engaging in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district and abroad; (ii) conducting substantial business in this forum; (iii)

registering with the Florida Secretary of State as a limited liability company; (iv) maintaining headquarters in Florida; and (iv) perpetrating tortious acts in Florida.

6.    This Court has jurisdiction over Defendant Dollar Tree because Zeroed-In has availed itself of the rights and benefits of the State of Florida by engaging in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district and abroad; (ii) conducting substantial business in this forum; (iii); and (iv) perpetrating tortious acts in Florida.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is the district within which Defendants have the most significant contacts.

## PARTIES

### A. Plaintiff Phillis Pounds

8.    Plaintiff Pounds is, and at all relevant times alleged herein was, an individual citizen of the State of Tennessee.

9.    On or about December 1, 2023, Plaintiff Pounds, a former employee of Defendant Dollar Tree, was informed that there had been a data breach affecting her PII.

10.    On December 1, 2023, Plaintiff received a data breach notification letter saying that Plaintiff's PII was compromised.

11.    Upon learning of the Data Breach, Plaintiff spent time planning how to protect her PII.

12.    In addition to the damages detailed herein, the Data Breach has caused Plaintiff to be at substantial risk for identity theft.

**B. Defendant Zeroed-In Technologies, LLC**

13.    Defendant Zeroed-In is incorporated in the State of Florida, with its principal place of business located at 11037 Harbor Yacht Court, #201, Fort Myers, FL 33908.

14.    Defendant is a data management company which provides human resources data analytics software products to businesses. Defendant's data analytics products include data extraction, data staging, data transformation, and graphing or charting of data.[1]

15.    Defendant Zeroed-In has over 70 clients, 30,000 registered users of its data analytics software, and about 2.7 million "work lives".[2]

16.    Defendant Dollar Tree was a client of Defendant Zeroed-In's human resources data analytics products.[3]

17.    Defendant Dollar Tree shares human resources PII with Defendant Zeroed-In, a third-party data analytics vendor.

**C. Defendant Dollar Tree, Inc.**

---

[1] *Our Solutions*, ZeroedIn Technologies, https://www.zeroedin.com/our-solutions/ (last visited Dec. 4, 2023).

[2] *What We Do*, ZeroedIn Technologies, https://www.zeroedin.com/about-zeroedin/ (last visited Dec. 5, 2023).

[3] *Dollar Tree hit by third-party data breach impacting 2 million people*, Bleeping Computer, https://www.bleepingcomputer.com/news/security/dollar-tree-hit-by-third-party-data-breach-impacting-2-million-people/ (last visited Dec. 5., 2023).

18.     Defendant Dollar Tree is incorporated in the State of Virginia, with its corporate office located at 500 Volvo Parkway, Chesapeake, VA 23330.

19.     Defendant is a company that hosts and manages dollar stores (titled "Dollar Tree") in locations around the U.S. and Canada.

20.     Defendant is known for selling most of its products for $1.25, enticing customers to go to Dollar Tree stores for quotidian household goods.

## FACTUAL ALLEGATIONS

### A. Data Analytics Generally

21.     Data analytics is the use of "data techniques and tools that identify patterns and trends," which subsequently produce useful insights that buttress informed decision-making.[4]

22.     The main purpose of data analytics is to tackle an organization's particular issues or questions (e.g., understand consumers, improve internal processes, generate business opportunities, etc.) to encourage better business results.[5]

23.     There are six steps in the data analysis process:[6]

---

[4] *What Is Data Analytics: The Ultimate Guide*, CompTIA, https://www.comptia.org/content/guides/what-is-data-analytics (last visited Dec. 5, 2023).
[5] Id.
[6] *Six Steps of Data Analysis Process*, GeeksforGeeks, https://www.geeksforgeeks.org/six-steps-of-data-analysis-process/ (last visited Dec. 5, 2023).

1) **Specification of data requirements** – A data analyst asks the stakeholder(s) (i.e., people who have invested resources into a data analysis project) the tasks and expectations for the data analysis project.

2) **Collection of data** – After specifying data requirements, the data analyst obtains relevant raw data from several sources (e.g., interviews, articles, reports) and stores the data in a spreadsheet or database.

3) **Processing of data** – Following the collection and storage, the data analyst 'cleans' the raw data by checking it for misspellings, irrelevancies, duplicates, formatting, and bias. In this stage, the data analyst may also convert the raw data into a format suitable for analysis by certain applications, such as Microsoft Excel or Structured Query Language ("SQL").

4) **Analysis of data** – Once the raw data is appropriately processed, the data analyst assesses the raw data to identify patterns and insights therefrom. Analysis of data may involve performing calculations and comparing data for better results. In this stage, certain data analysis software and/or programming languages are used, such as Excel, SQL, Python, and the R-language.

5) **Dissemination of data** – Upon analyzing the raw data, the data analyst performs "visualizations" of his or her analyses. To 'visualize' analyses, the data analyst will use specialized software to create graphs and/or charts illustrating the analyst's findings. The data analyst will share the finalized visualizations with stakeholders for informed decision-making.

6) **Acting on the data** – Considering the data analyst's visualized findings about the issue assessed by the analyst, stakeholders will then decide what action to take.

24.    Data analytics can be performed in-house (by the organization itself) or outsourced to companies specializing in data analytics.[7]

25.    An organization may choose to outsource its data analytics needs to a third-party data analytics company because of, among other motives, the cost and time required to maintain an internal data analytics team.

26.    In the instant case, Defendant Dollar Tree outsourced its data analytics needs to Defendant Zeroed-In's by utilizing Zeroed-In's human resources data analysis software.

**B. Defendant Zeroed-In's Data Collection Practices**

---

[7] *Advantages of outsourcing data analytics*, OP360, https://www.op360.com/blog/outsourcing-data-analytics/ (Dec. 5, 2023).

27.    Defendant Zeroed-In collects PII contained by its 'customers' "for hosting and processing purposes in connection with a subscription to [Zeroed-In's] products or services . . . ."[8]

28.    Defendant Dollar Tree was a customer of Defendant Zeroed-In's data analytics software products or services.

29.    As Defendant Dollar Tree's third-party vendor for human resources data analytics services, Defendant Zeroed-In collected from Dollar Tree the PII of Dollar Tree's current and/or former employees, including but not limited to: names, birth dates, and/or SSNs.

30.    Defendant Zeroed-In specifies in its Privacy Policy that it uses collected PII "to perform the services requested by the user[,] . . . for marketing purposes[,] . . ." and to manage and ameliorate the webpages through which Zeroed-In operates and collects data, facilitate the utilization of such webpages, and "track aggregate traffic patterns throughout" such webpages.[9]

**C. The Data Breach**

31.    On August 8, 2023, Defendant Zeroed-In detected strange activity on its network systems, prompting Defendant to investigate the activity.[10]

---

[8] *Privacy Policy*, Zeroed-In Technologies, https://www.zeroedin.com/privacy-policy/.
[9] *Id*.
[10] *Notice of Data Event*, ZeroedIn Technologies,
file://tamfs1/HOMESHARE/ararzola/Downloads/Notice%20of%20Data%20Event%20-%20Zeroed%20In%20-%20ME.pdf (last visited Dec. 4, 2023)

32.    From the investigation, Zeroed-In concluded that an unauthorized person gained access to some of Zeroed-In's systems between August 7 and August 8.[11]

33.    Defendant Zeroed-In asserted that it was able to determine which of its systems were accessed but stated that it could not determine which files were accessed.[12]

34.    Thus, Zeroed-In conducted a 'review' of its systems' contents to pinpoint what data was present during the data security event.[13]

35.    Upon conclusion of the 'review' of its systems on August 31, 2023, Zeroed-In determined that the following data types were compromised: names, birth dates, and/or SSNs.[14]

36.    Defendant Dollar Tree was included as one of Defendant Zeroed-In's clients affected by the Data Breach.[15]

37.    Upon information and belief, the PII of about 1.97 million individuals was affected by the Data Breach.[16]

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15]*Id.*

[16] *Data Breach Notifications*, Office of the Maine Atty. General, https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (last visited Dec. 4, 2023).

38.     Upon information and belief, the impacted individuals connected to the infiltration of the PII contained by Defendant Dollar Tree are current and/or former employees of Dollar Tree.[17]

39.     On November 27, 2023, Defendant Zeroed-In uploaded a "Notice of Data Event" letter on the Maine Attorney General website, notifying Maine residents of the Data Breach.[18]

**D. Defendants Failed to Comply with the FTC Act and Failed to Observe Reasonable and Adequate Date Security Measures**

40.     The FTC has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[19]

41.     Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks;

---

[17] *See Dollar Tree confirms significant data breach*, TechRadar, https://www.techradar.com/pro/security/dollar-treedata-breach-could-affect-millions-of-customers (last visited Dec. 4, 2023) (reporting that a spokesperson for Defendant Dollar Tree stated that Defendant Zeroed-In provided notice of the Data Breach to current and former employees of Dollar Tree)..

[18] *Data Breach Notifications*, Office of the Maine Atty. General, https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (last visited Dec. 5, 2023).

[19] *Start With Security*, Fed. Trade Comm'n ("FTC"), available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

understand their network's vulnerabilities; and implement policies to rectify

security issues.[20]

42.     The guidelines also suggest that businesses use an intrusion

detection system to expose a breach as soon as it happens, monitor all incoming

traffic for activity indicating someone is trying to hack the system, watch for

large amounts of data being siphoned from the system, and have a response plan

in the event of a breach.

43.     The FTC advises companies to not keep information for periods of

time longer than needed to authorize a transaction, restrict access to private

information, mandate complex passwords to be used on networks, utilize

industry-standard methods for security, monitor for suspicious activity on the

network, and verify that third-party service providers have implemented

reasonable security measures.[21]

44.     The FTC has brought enforcement actions against companies for

failing to adequately and reasonably protect consumer data, treating the failure

to do so as an unfair act or practice barred by Section 5 of the Federal Trade

Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions

---

[20]*Protecting Personal Information: A Guide for Business*, FTC, available at
https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-
information.pdf
[21] *Start With Security,* Fed. Trade Comm'n ("FTC"), available at
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

further elucidate the measures businesses must take to satisfy their data security obligations.

45.     Defendant Zeroed-In's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

46.     Defendant Dollar Tree's failure to verify that Defendant Zeroed-In, a third-party service provider, had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

47.     Plaintiff and Class Members gave their PII to Defendant Dollar Tree with the reasonable expectation and understanding that Defendant Dollar Tree would comply with its duty to keep such information confidential and secure from unauthorized access.

48.     Defendant Zeroed-In stated in its Privacy Policy conflicting terms and conditions that it would safeguard PII without guaranteeing security:

**SECURITY**
We employ robust security measures to protect against the loss, misuse and alternation of the personal information under our control. The [webpages through which Zeroed-In operates and collects data] employ Secure Socket Layer (SSL) technology using both server authentication and data encryption. The [webpages through which

Zeroed-In operates and collects data] are hosted in a secure server environment that uses firewalls, intrusion detection systems, and other advanced technology to protect against interference or access from outside intruders.

However, no method of transmission over the Internet, or method of electronic storage, is 100% secure. Therefore, *we cannot guarantee absolute security*. It is your responsibility to ensure you are accessing the [webpages through which Zeroed-In operates and collects data] and Service Platform using an up-to-date web browser. You are also responsible for maintaining the security and confidentiality of any usernames and passwords associated with the [webpages through which Zeroed-In operates and collects data].

*Keeping your personal information secure is our first priority*.[22]

49.    Defendants have been on notice for years that Plaintiff's and Class Members' PII was a target for bad actors because of, among other motives, the high value of the PII created, collected and maintained by Defendants.

50.    Despite such awareness, Defendants failed to impose and maintain reasonable and appropriate data security controls to protect Plaintiff's and Class Members' PII from unauthorized access that Defendants should have anticipated and guarded against.

51.    Defendant Zeroed-In was fully aware of its obligation to protect the PII of its customers because of their collection, storage, and maintenance of PII. Defendant Zeroed-In was also aware of the significant consequences if it failed to do so because Zeroed-In collected, stored, and maintained sensitive private

---

[22] *Privacy Policy*, Zeroed-In Technologies, https://www.zeroedin.com/privacy-policy/.

information from millions of individuals, and Zeroed-In knew that this

information, if hacked, would result in injury to consumers, including Plaintiff

and Class Members.

52.    Defendant Dollar Tree was fully aware of its obligation to protect

the PII of its current and former employees because of its collection, storage, and

maintenance of PII. Defendant Dollar Tree was also aware of the significant

consequences if it failed to do so because Dollar Tree collected, stored and

maintained sensitive private information from thousands of individuals, and

Dollar Tree knew that this information, if hacked, would result in injury to

consumers, including Plaintiff and Class Members.

53.    Despite understanding the consequences of insufficient data

security, Defendants failed to adequately protect Plaintiff's and Class Members'

PII, permitting bad actors to access and misuse it.

**E.  Defendants Failed to Comply With Industry Standards**

54.    Various cybersecurity industry best practices have been published

and should be consulted as a go-to resource when developing an organization's

cybersecurity standards. The Center for Internet Security ("CIS") promulgated its

Critical Security Controls, which identify the most commonplace and essential

cyber-attacks that affect businesses every day and proposes solutions to defend

against those cyber-attacks.[23] All organizations collecting and handling PII, such as Defendants, are strongly encouraged to follow these controls.

55.     Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative, including PCI DSS, HIPAA, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham Leach Bliley and ITIL.[24]

56.     Cybersecurity experts normally have identified data management companies, like Defendant Zeroed-In, as being particularly vulnerable to cyberattacks because of the value of the PII which they collect, use, and maintain.[25]

57.     Several best practices have been identified that a minimum should be implemented by data management companies like Defendant Zeroed-In, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software,

---

[23] Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), available at https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.
[24] *See CIS Benchmarks FAQ*, Center for Internet Security, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/ (last visited Dec. 5, 2023).
[25] *See Security Questions to Ask After the ZeroedIn Breach*, Information Week, https://www.informationweek.com/cyber-resilience/security-questions-to-ask-after-the-zeroedin-breach (last visited Dec. 5, 2023) (commenting that the growing outsourcing of data analytics work to third-party service providers may offer to malicious cyber-attackers novel "targets of opportunity – breach one data manager and gain access to data from a multitude of sources.).

maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[26]

58.    Other best practices have been identified that a minimum should be implemented by companies like Defendant Dollar Tree using third-party providers, including but not limited to ensuring that PII is only shared with third parties when reasonably necessary and that those vendors have appropriate cybersecurity systems and protocols in place.[27]

59.    Defendants failed to follow these and other industry standards to adequately protect the PII of Plaintiff and Class Members.

**F.  The Data Breach Caused Harm and Will Result in Additional Fraud**

60.    Without detailed disclosure to the victims of the Data Breach, individuals whose PII was used and maintained by Defendant Zeroed-In, including Plaintiffs and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their PII for months without being able to take precautions to prevent imminent harm.

61.    The ramifications of Defendant Zeroed-In's failure to secure Plaintiff's and Class Members' data are severe.

---

[26] *See* Center for Internet Security, *Critical Security Controls* (May 2021), available at https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.
[27] *See id*.

16

62.     Consumer victims of data breaches are much more likely to become victim of identity fraud. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

63.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[28]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[29]

64.     Identity thieves can use PII, such as that of Plaintiff and Class Members, which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

---

[28] 17 C.F.R § 248.201 (2013).
[29] *Id.*

65.     As a result of Defendant Zeroed-In's delay between the data breach in August and the notice of the Data Breach sent to affected persons in November, the risk of fraud for Plaintiff and Class Members has been driven even higher.

66.     Javelin Strategy and Research reports that identity thieves have stolen $112 billion in the past six years.[30]

67.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[31]

68.     There may be a time lag between when harm occurs versus when it is discovered, and also between when private information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web,

---

[30] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits-inflection-point (last visited April 10, 2017).

[31] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited April 10, 2017).

fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[32]

69.    Thus, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

### G. Plaintiff and Class Members Suffered Damages

70.    The Data Breach was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including (a) Defendant Zeroed-In's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information and (b) Defendant Dollar Tree's failure to verify that Zeroed-In, Dollar Tree's third-party vendor for data analytics services, had imposed reasonable security measures.

71.    Had Defendants remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security

---

[32] GAO, *Report to Congressional Requesters*, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 10, 2017).

measures recommended by experts in the field, Defendants would have prevented intrusion into its information storage and security systems and, ultimately, the theft of the PII of over 1.97 million individuals.

72.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.

73.    Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

       **a.**  theft of their personal and financial information;

b.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and misused via the sale of Plaintiff's and Class Members' information on the Internet's black market;

c.  the untimely and inadequate notification of the Data Breach;

d.  the improper disclosure of their PII;

e.  loss of privacy;

f.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g.  ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market; and,

h.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the

inconvenience, nuisance and annoyance of dealing with all such

issues resulting from the Data Breach.

74.     While Plaintiff's and Class Members' private information have been

stolen, Defendant Zeroed-In continues to hold individuals' PII, including

Plaintiff's and Class Members'. Particularly because Defendants have

demonstrated an inability to prevent a breach or stop it from continuing even

after being detected, Plaintiff and Class Members have an undeniable interest in

ensuring that their private information is secure, remains secure, is properly and

promptly destroyed, and is not subject to further theft.

## CLASS ALLEGATIONS

75.     Plaintiff brings this Action as a class action under Federal Rule of

Civil Procedure 23 and seeks certification of the following nationwide Class

("Class"):

> All persons whose personal information was accessed, compromised,
> copied, stolen, and/or revealed as a result of Defendants' (and any of
> Defendants' affiliates and customers) Data Breach.

76.     Excluded from the Class are Defendants, their officers and directors,

and Members of their immediate families or their legal representatives, heirs,

successors or assigns and any entity in which Defendants have or had a

controlling interest.

77.    Class certification of Plaintiff's claims is appropriate she can prove the elements of the claims on a class-wide basis utilizing the same evidence as would be used to prove those elements in separate actions alleging the same claims.

78.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1)**. The Members of the Class are so numerous that joinder of all Class Members would be impracticable. Upon information and belief, the Class numbers in the millions. Also, the Class is comprised of an easily ascertainable set of individuals who were impacted by the Data Breach. The exact number of Class Members can be confirmed through discovery, which includes both Defendants' records. The resolution of Plaintiff's and Class Members' claims through a class action will behoove the Parties and this Court.

79.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Common questions of fact and law exist as to all Members of the Class and predominate over questions affecting only individual Class Members. These common questions of law or fact, include, among other things:

- Whether Defendants' cybersecurity systems and/or protocols before and during the Data Breach complied with relevant data security laws and industry standards;
- Whether Defendants properly implemented their purported security measures to safeguard Plaintiff's and Class Members' private information from unauthorized access, propagation, and misuse;
- Whether Defendants took reasonable measures to determine the extent of the Data Breach after it first discovered the same;

23

- Whether Defendants disclosed Plaintiff's and Class Members' private information in contravention of the understanding that the information was being revealed in confidence and should be maintained;
- Whether Defendants willfully, recklessly, or negligently failed to maintain and execute reasonable procedures and security controls to preclude unauthorized access to Plaintiff's and the Class Members' private information;
- Whether Defendants were unjustly enriched by its actions; and
- Whether Plaintiff and Class Members are entitled to damages, injunctive relief, or other equitable relief, and the extent of such damages and relief.

80.    Defendants engaged in a common course of conduct granting rise to the legal rights sought to be enforced by Plaintiff, on behalf of themselves and other Members of the Class. Similar or identical common law violations, business practices, and injuries are involved.

81.    **Typicality—Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Class because, *inter alia*, all Class Members were similarly injured and sustained similar monetary and economic injuries as a result of Defendants' misconduct described herein and were accordingly subject to the alleged Data Breach. Also, there are no defenses available to Defendants that are unique to Plaintiff.

82.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she retained counsel competent and experienced in complex class action litigation, and she

will prosecute this action earnestly. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

83.    **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**. Defendants acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate regarding the Class under Federal Rule of Civil Procedure 23(b)(2).

84.    **Superiority—Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the

benefits of single adjudication, economies of scale, and comprehensive

supervision by a single court.

85.    Class certification is also appropriate under Rules 23(b)(1) and/or

(b)(2) because:

- The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications establishing conflicting standards of conduct for Defendants;

- The prosecution of separate actions by individual Class Members would create a risk of adjudication that would be dispositive of the interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and

- Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief regarding the Members of the Class as a whole.

86.    Class certification is also appropriate because this Court can

designate specific claims or issues or class-wise treatment and may designate

multiple subclasses under Federal Rule of Civil Procedure 23(c)(4).

87.    No unusual difficulties are likely to be encountered in the

management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I – NEGLIGENCE
### (On behalf of Plaintiff and the Class)

88.     Plaintiff and the Class re-allege and incorporate by reference herein

all of the allegations contained in paragraphs 1 through 87.

89.    Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiff's and Class Members' information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things:

 a.  designing, maintaining, and testing Defendants' security protocols to ensure that the private information of Plaintiffs and the Class in Defendants' possession was adequately secured and protected;

 b.  to use reasonable care in obtaining, maintaining, and securing private information in Defendants' possession;

 c.  to impose processes to aptly discover and prevent the improper access and misuse of the personal information of Plaintiff and the Class;

 d.  to adequately disclose that the personal information of Plaintiff and the Class within Defendants' possession might have been compromised, how it was compromised, and the types of data that were compromised and when.

90.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendants' insufficient security practices.

91.    Defendants' own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendants' misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Defendants' misconduct also included its decisions not to comply with industry standards for the safekeeping of the personal information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

92.    Plaintiff and the Class had no ability to protect their personal information that was in, and possibly remains in, Defendants' possession.

93.    Defendants were in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

94.    Through its actions and/or omissions, Defendants unlawfully breached their duties to Plaintiff and the prospective Class Members by

    a.  failing to design, maintain, and test its security protocols to ensure that Plaintiff's and the prospective Class Members' private information was adequately secured;

failing to use reasonable care in obtaining, maintaining, and securing private information in Defendants' possession;

b. failing to implement processes to rapidly discovery and preclude the improper access and misuse of personal information of Plaintiff and the Class; and

c. failing to adequately disclose that Plaintiff's and the prospective Class Members' personal information might have been compromised, how it was compromised, and the types of data that were compromised and when.

95. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and the Class, their personal information would not have been compromised.

96. There is a close causal connection between Defendants' failure to implement security measures to protect the personal information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The personal information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such personal information by adopting, implementing, and maintaining appropriate security measures.

97. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use

reasonable measures to protect personal information. The FTC's publications and orders described above also form part of the basis of Defendants' duties in this regard.

98.     Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of personal information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

99.     Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

100.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

101.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

102.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury,

including but not limited to:

    a.  actual identity theft;

    b.  the loss of the opportunity of how their personal information is used;

    c.  the compromise, publication, and/or theft of their personal information;

    d.  out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their personal information;

    e.  lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

    f.  costs associated with placing freezes on credit reports;

    g.  the continued risk to their personal information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the personal information of Plaintiff and the Class; and

    h.  future costs in terms of time, effort, and money that will be expended

to prevent, detect, contest, and repair the impact of the personal information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

103.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

104.    Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their personal information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the personal information in its continued possession.

105.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Nationwide Class are entitled to and demand actual, consequential, and nominal damages.

### COUNT II – UNJUST ENRICHMENT
#### (On behalf of Plaintiff and the Class)

106.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 87.

32

107.    Plaintiff and Class Members conferred a benefit on Defendants. Specifically, they provided their private information to Defendant in exchange for employment opportunities.

108.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

109.    Defendants failed to secure Plaintiff's and Class Members' PIIand, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

110.    Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

111.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to Defendant's services.

112.    Plaintiff and Class Members have no adequate remedy at law.

113.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their Private Information is used; (c) the compromise, publication, and/or theft of their Private Information; (d) out-of-pocket expenses associated with the

prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

114.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

115.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintifs and Class Members, proceeds that they unjustly received from them.

**COUNT III – BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiff and the Class)**

116.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 87.

117.    A relationship existed between Plaintiff and the Class Members and Defendant in which Plaintiff and Class Members entrusted Defendants to protect Plaintiff's and Class Members' private information, and Defendants accepted that trust.

118.    Defendants owed, and owes, a fiduciary duty to Plaintiff and the Class to keep Plaintiff's and Class Members' private information confidential.

119.    Plaintiff and Class Members acted in reasonable reliance upon Defendants' express and/or implied promises that they would keep their private information secure in compliance with data security industry standards and those required by Section 5 of the FTC Act.

120.    Defendants breached their fiduciary duty to Plaintiff and the Class by failing to protect Plaintiff's and the other Class Members' private information from access by unauthorized third parties.

121.    As a result of Defendant's breach of its fiduciary duty of confidentiality and the disclosure of Plaintiff's and Class Members' private information, Plaintiff and Class Members have suffered and will continue to suffer damages, including, but not limited to:

      a.  the untimely and/or inadequate notification of the Data Breach;

b. improper disclosure of Plaintiff's and Class Members' private information;

c. loss of privacy;

d. out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach;

e. the value of their time spent mitigating identity theft and/or identity fraud;

f. the increased risk of identity theft and/or identity fraud; and

g. emotional distress.

122.    But for Defendants' breach of fiduciary duty, the damage to Plaintiff and Class Members would not have occurred.

123.    Defendants' breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class Members.

124.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiffsand Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

### COUNT IV– DECLARATORY JUDGMENT
### (On behalf of Plaintiff and the Class)

125.     Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 87.

126.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court may enter a judgment declaring the rights and legal relations of the Parties and grant further necessary relief. The Court also has broad authority to restrict acts that are tortious and violate the terms of regulations described in this Complaint.

127.    There is an actual, substantial controversy concerning Defendants' present and prospective obligations to reasonably protect users' private information and whether Defendants are upholding cybersecurity measures sufficient to protect the Class, including Plaintiff, from future security breaches that risk Plaintiff's and Class Member's information.

128.    Plaintiff avers that Defendants' cybersecurity measures are insufficient. Also, Plaintiff and Class Members still suffer injury from the Data Breach and stay at imminent risk that future breaches of their private information and ongoing fraud against them will happen.

129.    Plaintiff petitions the Court to enter a judgment declaring the following: (i) Defendants owe a duty to protect employees' private information and to timely notify them of a data breach under common law and Section 5 of the FTC Act; and (ii) Defendants are in in violation of these legal duties by failing to impose reasonable measures to protect private information in their possession and control.

130.    Plaintiff asks the Court to issue injunctive relief mandating Defendants to use appropriate security controls consistent with law and industry standards to safeguard consumers' private information from future data breaches.

131.    If an injunction is not issued, the Class Members will suffer irreparable injury and lack a sufficient legal remedy, should another data breach occur. The risk of another breach is real, immediate and substantial. If another breach happens, the Class Members will not have an adequate legal remedy because several of the corresponding injuries are not readily quantified and Class Members will be compelled to bring several lawsuits to correct the same misconduct.

132.    The hardship to Class Members if an injunction is not granted exceeds the hardship to Defendants if an injunction is granted. If a similar security breach happens again from Defendants' repeated misconduct, Class Members likely will be subjected to substantial hacking attempts and other damage. The cost to Defendants of complying with an injunction by imposing reasonable cybersecurity standards is minimal, and Defendants have pre-existing legal duties to impose such measures.

133.    Issuance of the petitioned injunction will not harm the public interest. Rather, such an injunction would behoove the public by precluding

38

further data breaches, thereby eliminating the additional injuries that would result to the Class Members and the millions of individuals whose private information would be further at risk.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.  An order requiring Defendants to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: December 7, 2023                    Respectfully submitted,


                                   */s/ Francesca K. Burne*
                                   Francesca Kester Burne
                                   FL Bar No. 1021991
                                   **MORGAN & MORGAN**
                                   **COMPLEX LITIGATION GROUP**
                                   201 Franklin Street
                                   6th Floor
                                   Tampa, Florida 33602
                                   Phone: (813) 424-5618
                                   Email: fburne@forthepeople.com

                                   */s/ Antonio Arzola, Jr.*

40

Antonio Arzola, Jr.
FL Bar No. 1040686
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 Franklin Street
6th Floor
Tampa, Florida 33602
Phone: (813) 229-4027
Email: ararzola@forthepeople.com